Nancy ROY, Plaintiff,

v.

RUSSELL COUNTY AMBULANCE SERVICE, Board Steve Kerr, Chair Winston Roy, Sherry Daniels, and Bobby Bernard, Defendants.

No. C91–0080–BG(H).

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Dec. 30, 1992.

Edward E. Dove, Lexington, KY, for plaintiff.

Robert L. Bertram, Bertram & Wilson, Jamestown, KY, O. Lee Cave, III, James M. Bolus, Jr., Clark, Ward & Cave, Louisville, KY, for defendants.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff in this employment discrimination suit requests leave of this Court to amend her Complaint pursuant to Fed. R.Civ.P. 15(a). Defendants oppose the motion and assert their own motion to remand Plaintiff's pendent state law claim.

### I.

Plaintiff filed suit in June, 1991, alleging violations by Defendants of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Her original complaint detailed two instances in which Defendants allegedly refused promotions to her on the basis of her gender. The complaint also promised that Plaintiff had complied with all conditions precedent to this Court's jurisdiction, including § 2000e–5's filing requirements.

Plaintiff now asks this Court for permission to file an amended Complaint, which restates her original allegations and asserts two additional job discrimination claims. Her amended pleading would include a charge that Defendants altered the terms of her employment as punishment for her efforts to redress earlier unlawful practices. *See* 42 U.S.C. § 2000e–3(a). The amended Complaint would also allege that Defendants discriminated against Plaintiff on the basis of her pregnancy. *See* 42 U.S.C. §§ 2000e-(2)(a)(1) and 2000e(k).

Over a year has passed since Plaintiff filed her original Complaint. The parties have conducted initial discovery. Defendants contend that revised Complaint throws its net more broadly than did the first, and focuses on actions outside the scope of the original pleading. Defendants add that the proposed amendment will force them to undertake additional discovery to rebut Plaintiff's new charges.

Permission to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Courts should grant leave to amend a complaint unless: (1) revision of the pleading would prejudice the opponent, or (2) the amended pleading could not withstand a motion to dismiss for failure to state a claim. *United States v. Wood,* 877 F.2d 453, 456 (6th Cir.1989).

An amendment will prejudice the opponent if it will "adversely affect[ ] its posture in the litigation." *Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir.1983). Defendants, however, have not established that they will be prejudiced due to insufficient time to conduct discovery, or that they have been unfairly surprised by Plaintiff's new assertions, or that they will be unable to rebut the new claims effectively. *Roth,* 705 F.2d at 155. Nor have Defendants claimed that Plaintiff's delay in requesting leave to amend was intended to harass the Defendants. *Janikowski v. Bendix Corp.,* 823 F.2d 945, 951 (6th Cir.1987). And if the proposed revision forces Defendants to undertake *duplicative* discovery, "the proper remedy ... would be to require the amending party to bear a portion of the additional expense", not to deny permission to amend. *Id.* at 952. Defendants have not demonstrated sufficient prejudice to warrant withholding permission to amend.

Nor have Defendants convinced this Court that the Complaint, as amended, fails to state a claim upon which relief could be granted. An amended pleading states a claim unless, accepting all factual allegations as true and construing all ambiguities in favor of the amending party, "it appears to a certainty that the pleader would not be entitled to any relief...." *Roth,* 705 F.2d at 155. The Complaint, as amended, alleg-

es facts that would entitle the Plaintiff to recover under 42 U.S.C. § 2000e, and the pleading continues to maintain that Plaintiff complied with all filing requirements imposed by § 2000e–5. A dismissal for failure to state a claim would not be proper.

## II.

Plaintiff asserts a right to recover under Kentucky law based upon the same discriminatory conduct alleged in violation of Title VII. *See* K.R.S. § 344.010 *et seq.* Plaintiff asks this Court to exercise its pendent jurisdiction and adjudicate her state law claim together with her Title VII cause of action. Defendants contend that this Court has no authority to determine a state law cause of action in concert with Title VII claims, and add that judicial economy and fairness should in any event preclude the exercise of pendent jurisdiction.

█ Before it may assert pendent jurisdiction, a federal court must be convinced of two facts: first, that it has the *power* to hear the state law claim; and second, that it would be *proper* to adjudicate the state and federal claims in one proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). Federal law thus dictates whether this Court *may* hear Plaintiff's state claim; it remains within this Court's discretion to determine whether it *should* extend its jurisdiction. Each of these elements will be considered in turn in the discussion below.

### A.

█ Absent diversity jurisdiction, a federal court possesses the power to adjudicate a state law claim only if: (1) a federal cause of action with substance sufficient to confer subject matter jurisdiction is properly before the court; (2) the state claim derives from the same "nucleus of operative fact" which gives rise to the federal cause of action; and (3) the statute governing the federal cause of action has not expressly or impliedly negated the exercise of jurisdiction over the nonfederal claim. *Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138; *Owen Equip. & Erection Co. v. Kro-*

*ger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978); *Kitchen v. Chippewa Valley Sch.*, 825 F.2d 1004, 1009–10 (6th Cir.1987). *See also* 28 U.S.C. § 1367(a) and (c).

█ Plaintiff's claim to Title VII relief carries sufficient substance to warrant federal jurisdiction. The presence of a "common nucleus of operative fact" is equally clear: Kentucky law's definition of employment discrimination is virtually identical to Title VII's description of "unlawful employment practice", and conduct which violates Title VII almost certainly contravenes state law as well. *See* 42 U.S.C. § 2000e–3(a) *and* K.R.S. § 344.040(1). Defendants therefore focus on the third prerequisite to pendent jurisdiction power. They argue that Congress implicitly negated pendent jurisdiction over state claims when it enacted Title VII, and contend that the simultaneous adjudication of Plaintiff's state claim would be incompatible with the Congressional intent underlying Title VII.

Defendants find the source of Congress's intent to forbid pendent jurisdiction in Title VII's procedural and remedial provisions. They note, for example, that Title VII mandates bench trials and expeditious disposition of employment discrimination lawsuits. 42 U.S.C. § 2000e–5(f)(5). The law also limits its remedies to equitable relief and two years' back pay. § 2000e–5(g)(1) (West 1992); *see also Kitchen*, 825 F.2d at 1010. By contrast, state laws governing employment discrimination, like Kentucky's, typically permit jury trials and the more extensive remedy of compensatory damages. K.R.S. § 344.450. Defendants insist that the addition of a state law claim to Title VII litigation would undermine Title VII's philosophy, objectives, and streamlined procedure.

The Sixth Circuit ventured briefly onto this field in its opinion in *Kitchen, supra.* The plaintiff in that action had alleged violations of 42 U.S.C. § 1983, Title VII, and Michigan's Civil Rights Act. Her opponents asked the court to remand the state law claim, advancing the same arguments as Defendants present in this suit. *Kitchen*, 825 F.2d at 1009–10. But the Sixth Circuit concluded that the effort to protect Title VII's procedural and remedial integri-

**520**

ty would be futile under the circumstances existing in that case: the plaintiff's § 1983 claim would inevitably inject a jury trial and compensatory damages into the Title VII litigation, regardless of the court's treatment of the state law action. *Id.* at 1010. Had the plaintiff alleged violations of Title VII alone, though, "the concerns apparent when Title VII is the only basis for federal jurisdiction" might have persuaded the court to remand her state claim. *Id.* But the Sixth Circuit ultimately refused to decide whether federal courts could exercise pendent jurisdiction where, as squarely presented here, a plaintiff seeks to attach a state claim solely to Title VII. *Id.* at 1010 n. 1.

The Sixth Circuit has not returned to the issue discussed in *Kitchen,* and the interplay of Title VII and pendent jurisdiction continues to divide the District Courts.[1] The controversy has yielded conflicting results among courts within the Sixth Circuit,[2] and has even been the subject of sharp disagreement between Judges in the same District.[3] But the weight of authority in recent years suggests a growing consensus that federal courts do possess the authority to exercise pendent jurisdiction over state causes of action joined solely to Title VII claims.

Years of debate and the able investigations of many courts have uncovered little evidence to refute the Tenth Circuit's conclusion that neither Title VII's language nor its legislative history indicate an intent to negate pendent jurisdiction. *Jones v. Intermountain Power Project,* 794 F.2d 546, 552 (10th Cir.1986). An intent to prohibit pendent jurisdiction would have arisen in sharp contrast to the jurisdictional "impulse ... toward entertaining the broadest possible scope of action consistent with fairness to the parties" prevailing at the time of Title VII's enactment. *Gibbs,* 383 U.S. at 724, 86 S.Ct. at 1138. "Against the

backdrop of the volume of pendent jurisdiction cases," the Tenth Circuit contended, "one would be surprised if Congress did not deal expressly with the issue if it intended to change the general law." *Jones,* 794 F.2d at 552. Nor can an express intent to divest federal courts of pendent jurisdiction be discerned in the record of Congress's debates regarding Title VII. *Id.*

And if, despite the absence of an express provision addressing the issue, Congress truly meant to imply an intent to preclude pendent jurisdiction, it chose language which was singularly ill-suited to accomplish its goal. It is well-settled, for example, that nothing in Title VII prevents the conjunction of other *federal* claims to a Title VII cause of action. *Johnson v. Railway Express Agency,* 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). Such federal claims quite commonly will permit jury trials and a broader award of compensatory damages, notwithstanding the presence of a Title VII claim in the same litigation. *Johnson,* 421 U.S. at 460, 95 S.Ct. at 1720; *Kitchen,* 825 F.2d at 1010. Plaintiffs may easily attach their state claims to these federal provisions and completely circumvent Congress's supposed intent to preclude all pendent jurisdiction. *See, e.g., Kitchen,* 825 F.2d at 1010. If Congress had indeed desired to protect Title VII's bench trial and equitable remedy provisions from outside interference, it presumably would have insulated Title VII actions from contradictory federal claims as well.

Nor does Title VII's emphasis on expeditious disposition effectively preclude the pendent adjudication of state claims. Title VII in fact permits plaintiffs to file their Title VII causes of action in *state* courts as well as in federal courts. *Yellow Freight System v. Donnelly,* 494 U.S. 820, 825, 110 S.Ct. 1566, 1570, 108 L.Ed.2d 834 (1990). Surely Congress, having allowed state jur-

---

**1.** *See, e.g., Bradford v. General Tel. Co.,* 618 F.Supp. 390, 397 (W.D.Mich.1985) and cases cited therein.

**2.** *Compare Taylor v. National Group,* 765 F.Supp. 411, 417 (N.D.Ohio 1990) (holding pendent jurisdiction proper) *with Bennett v. Steiner–Liff Iron & Metal,* 714 F.Supp. 895, 897 n. 1

(M.D.Tenn.1989) (suggesting pendent jurisdiction legally improper).

**3.** *See, e.g., Yousef v. Borman Foods,* 667 F.Supp. 443, 445 (E.D.Mich.1987) (pendent jurisdiction proper), *disagreeing with Jong–Yul Lim v. International Inst. of Metro. Detroit,* 510 F.Supp. 722 (E.D.Mich.1981).

isdiction of Title VII claims, would have expected that Title VII plaintiffs in state court would prosecute their state law claims in the same proceeding. It seems highly unlikely that Congress meant to impose an odd and cumbersome requirement of simultaneous state proceedings adjudicating Title VII claims in one courtroom and all non-Title VII actions in another. Title VII's expedited adjudication policy simply cannot be read so broadly as to preclude the litigation of all state claims in a Title VII proceeding. As the Tenth Circuit commented, Title VII's encouragement of expeditious disposition "is too thin a reed on which to hang some imagined congressional intent to repeal pendent claims jurisdiction." *Jones,* 794 F.2d at 552.[4]

And finally, Defendants' insistence that Congress intended to preclude all pendent jurisdiction in Title VII actions fails to account for Title VII's overarching policy *allowing* parties to add other federal and state remedies to those offered by Title VII. The Supreme Court has noted that "[t]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes." *Johnson,* 421 U.S. at 459, 95 S.Ct. at 1719. "In particular," the Court commented, "Congress noted that the remedies available to the individual under Title VII are co-extensive with the individual's right to sue under the provisions of the Civil Rights Act of 1866, ... and that the two procedures ... are not mutually exclusive." *Id.*[5] It would indeed be strange that this Congressional desire to encourage parties to resort to state remedies would find its expression in language which, by prohibiting pendent jurisdiction, would make it more difficult for plaintiffs to vindicate their rights under state law.[6]

Defendants' theory is not without merit. But this Court is convinced that neither the provisions of Title VII nor its policy divest federal courts of their general power to exercise pendent jurisdiction over related state claims. This Court therefore will align itself with the Tenth Circuit and those other courts which hold that Title VII permits the adjudication of pendent state causes of actions. *See Jones, supra; Bouman v. Block,* 940 F.2d 1211, 1230 (9th Cir.1991); *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 356 (1st Cir.1989); and *Phillips v. Smalley Maint. Services,* 711 F.2d 1524, 1531 (11th Cir.1983).

**B.**

To determine that this Court possesses the authority to adjudicate Plaintiff's state law claim does not compel the conclusion that this Court *should* consent to the addition of that claim. The Supreme Court describes pendent jurisdiction as "a doctrine of discretion" whose "justification lies in considerations of judicial economy, convenience and fairness to litigants...."

---

**4.** It should be noted that the Tenth Circuit cited the federal courts' "exclusive jurisdiction" over Title VII claims as another basis for refusing to find an implied negation of pendent jurisdiction. *Jones,* 794 F.2d at 553. The court reasoned that Congress would not have intended to force plaintiffs to file suit in federal court, but deny them an opportunity to assert their state claims in the same proceeding. *Id.* This "exclusive jurisdiction" argument, however, has clearly been robbed of its force. *Donnelly,* 494 U.S. at 825, 110 S.Ct. at 1570. Nevertheless, as noted above, Congress's presumed intent to assure a state forum to Title VII litigants suggests in its own right that Congress was not offended by the conjunction of state law and Title VII claims, and did not mean to imply a desire to negate pendent jurisdiction.

**5.** The law cited by the Supreme Court, 42 U.S.C. § 1981, which Congress saw as complementing Title VII's remedies, permits the sort of compensatory damages that Defendants here contend are incompatible with Title VII. *Johnson,* 421 U.S. at 460, 95 S.Ct. at 1720.

**6.** The laborious search for an *implied* intent to negate pendent jurisdiction may no longer be necessary under prevailing law. A recent federal statute, which in essence codifies the *Gibbs* pendent jurisdiction rules, allows District Courts to exercise "supplemental jurisdiction" over appropriate claims "[e]xcept ... as *expressly* provided otherwise by Federal statute...." 28 U.S.C. § 1367(a) (emphasis added). As noted above, the Supreme Court has recognized Congress's power to exclude, by implication, the ability of federal courts to assert pendent jurisdiction. *Kroger,* 437 U.S. at 373, 98 S.Ct. at 2402. The new supplemental jurisdiction statute suggests, though, that Congress wishes to bar pendent adjudication only in such instances where federal law expressly declares that intent.

*Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. A federal court should not hesitate to dismiss a pendent state claim if it appears that state issues with respect to proof or remedies will predominate at trial; or if the addition of the state claim will create a likelihood of jury confusion in treating divergent theories of relief; or if resolution of the state claim will require the court to interpret novel state issues better left to the determination of the state's courts. *Id.* at 726–27, 86 S.Ct. at 1139–40; 28 U.S.C. § 1367(c).

■ Defendants insist that the broader remedy available under Plaintiff's state claim will result in a trial dominated by issues pertinent solely to Kentucky law. They also contend that the jury, whose role will be limited to the adjudication of the state claim, will be confused by the presentation of evidence bearing exclusively on the Title VII action. Similar concerns have indeed prompted other courts to decline pendent jurisdiction over state claims. The District of Columbia Circuit, for example, approved the dismissal of state claims for "sexual extortion", tortious interference with contract, and defamation which the plaintiff had hoped to append to her Title VII action. *Bouchet v. National Urban League,* 730 F.2d 799, 804–805 (D.C.Cir. 1984) (Scalia, J.). That court worried that the compensatory and punitive damages available under the state claims would produce a trial in which those claims so predominated that "[t]hey would be pendent to this Title VII litigation much as a dog is pendent to its tail." *Id.* at 805–806. One District Court in the Sixth Circuit also refused pendent jurisdiction over a state law "constructive discharge" claim in a Title VII action. *Bennett v. Steiner–Liff Iron & Metal,* 714 F.Supp. 895, 898 (M.D.Tenn. 1989). That court concluded that the jury would "almost inevitably hear evidence going to the Title VII claim" and be prevented from focusing on the information concerning the state claim. *Id.*[7]

But these considerations are not as compelling under the circumstances presented by the instant case. Plaintiff, for instance, does not seek punitive damages in her Complaint, and contends that Kentucky law prohibits such an award. *See* K.R.S. 344.230(3)(h) *and Kentucky Comm'n on Human Rights v. Fraser,* 625 S.W.2d 852, 856 (Ky.1981). Plaintiff's limitation to compensatory damages under Kentucky law would reduce the likelihood that an inflated recovery would cause state law issues to overwhelm Plaintiff's Title VII claims, and would thereby remove the danger that so concerned the District of Columbia Circuit in *Bouchet, supra.*

And Plaintiff's theory of recovery under Kentucky law will closely parallel that asserted under Title VII. State and federal law describe unlawful employment practices in the same terms, and evidence supporting Plaintiff's Title VII claim may properly be considered by the jury with respect to Plaintiff's Kentucky action. *Compare* 42 U.S.C. § 2000e–3(a) *and* K.R.S. § 344.040(1). It is true that Plaintiff advances two additional Title VII claims, alleging pregnancy discrimination and retaliation, for which she asserts no pendent Kentucky law actions. The presentation of evidence regarding these claims will interest only the Court, and thus the jury inevitably will hear some information which they cannot properly consider with respect to Plaintiff's sole state law claim. But the Court is confident that this additional evidence will not be so extensive or inflammatory that the jury will be incapable of focusing on those issues entrusted to their judgment. Plaintiff in any event will not introduce the sort of confusing, widely divergent streams of evidence which prompted the District Court in *Bennett, supra,* to refuse pendent jurisdiction.

## CONCLUSION

A careful review of the law and allegations thus far presented in this litigation has convinced the Court that pendent jurisdiction may properly be exercised over Plaintiff's state law claim. It should be noted, though, that the decision to assume such jurisdiction is necessarily provisional. *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139.

---

7. That court also cited "the unsettled condition of Tennessee law" with respect to the plaintiff's state claim as an additional factor influencing the court's refusal of pendent jurisdiction. *Bennett,* 714 F.Supp. at 898.

Dangers of jury confusion or the predominance of the Kentucky claim may become more evident as the parties develop this case. If this occurs, the Court will not hesitate to dismiss Plaintiff's state claim.[8]

## ORDER

This matter is before the Court for consideration of Plaintiff's Motion to amend her Complaint, and for consideration of Defendants' Motion to dismiss Plaintiff's pendent state law claim. The Court having reviewed this matter, having set forth its findings in a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's Motion for leave to amend her Complaint pursuant to Fed.R.Civ.P. 15(a) is GRANTED; and

IT IS FURTHER ORDERED that Defendants' Motion to dismiss Plaintiff's pendent state law claim is DENIED.

---

**8.** As the Supreme Court counseled in *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139. "Pretrial procedures or even the trial itself may reveal a substantial hegemony of state law claims, or likelihood of jury confusion, which could not have been anticipated at the pleading stage. Although it will of course be appropriate to take into account ... the already completed course of litigation, dismissal of the state claim might even then be merited."